T.C. Memo. 2001-268


UNITED STATES TAX COURT


KIN SANG CHAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16135-99.                    Filed October 4, 2001.


<u>A. Duane Webber</u> and <u>Dirk Gifford</u>, for petitioner.

<u>William J. Gregg</u>, for respondent.


MEMORANDUM OPINION


DAWSON, <u>Judge</u>:  This case was assigned to Special Trial Judge John F. Dean pursuant to the provisions of section 7443A(b)(5), in effect when this case commenced, and Rules 180 and 181 and Interim Rule 183.  Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the tax years for which petitioner seeks abatement of

interest. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

DEAN, Special Trial Judge: On May 6, 1999, respondent issued a notice of final determination denying petitioner's claim to abate interest for the taxable years 1992 and 1993. Petitioner challenged the determination by timely filing a petition under section 6404(i), as in effect at the time the petition was filed, and Rule 281.

The issue for decision is whether petitioner is entitled to abatement of interest assessments from October 20, 1994, through the present date with respect to his 1992 and 1993 taxable years.

Background

The stipulation of facts and the accompanying exhibits are incorporated herein by reference. Petitioner resided in Bayside, New York, at the time his petition was filed with the Court.

Petitioner emigrated from Hong Kong to live in the New York City area in 1988. On April 11, 1991, Kin Sang Chan, Inc. (KSCI), was incorporated with petitioner acting as the sole shareholder and president. KSCI traded stocks for profit solely on the Hong Kong Stock Exchange. KSCI obtained funds to purchase stocks by using credit cards and a line of credit from the Hang Seng Bank of China. The line of credit was secured by a security

interest in the stock purchased by KSCI. When KSCI sold stock, KSCI was required to repay a portion of its loans from the bank in an amount equal to 50 percent of the original purchase price of the stock sold.

On April 25, 1991, KSCI elected to be treated as an S corporation by filing Form 2553, Election by a Small Business Corporation, with the Internal Revenue Service (IRS). On July 8, 1991, the IRS accepted KSCI's election to be treated as an S corporation. KSCI timely filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for taxable years 1992 and 1993. KSCI's returns were prepared by Han Fin Chang (Mr. Chang), a certified public accountant.

Petitioner and his wife timely filed with the IRS joint Forms 1040, U.S. Individual Income Tax Return, for taxable years 1992 and 1993. Mr. Chang prepared the returns for petitioner and his wife.

On October 20, 1994, the IRS sent KSCI a letter stating that KSCI's 1992 tax return had been assigned to Melvin Matos (Mr. Matos), an IRS examiner, for examination. Petitioner, on behalf of KSCI, contacted Mr. Matos on October 25, 1994, by telephone and advised Mr. Matos that KSCI's accountant, Mr. Chang, would contact Mr. Matos to schedule an appointment to commence the examination of KSCI's 1992 return. On December 5, 1994, Mr. Matos contacted Mr. Chang by phone, and they agreed to meet on

January 4, 1995, to commence the examination of KSCI's 1992 return.

At the January 4 meeting petitioner and Mr. Chang provided Mr. Matos with copies of KSCI's bank statements and dividends received account statements. Mr. Matos then requested that additional information be supplied by KSCI on or before January 18, 1995.

On April 21, 1995, at the request of his supervisor, Mr. Matos began to review whether KSCI was a personal holding company. On April 24, 1995, Mr. Matos and petitioner had a phone conversation, and petitioner agreed to provide the additional information previously requested by Mr. Matos. On April 27, 1995, petitioner provided Mr. Matos with that information.

On May 18, 1995, Mr. Matos met with petitioner and asked petitioner to forward to KSCI's accountant an additional information request. On June 29, 1995, petitioner provided answers to some of the questions in the information request. Mr. Matos and petitioner scheduled another meeting for August 3, 1995, to review the remaining information requested, and the two met on that date. On August 7, 1995, Mr. Matos contacted petitioner and requested a copy of KSCI's 1993 tax return. Mr. Matos received a copy of KSCI's 1993 Form 1120S on August 25, 1995.

On September 15, 1995, Mr. Matos, with the approval of his supervisor, began treating KSCI as a personal holding company and not an S corporation for the 1992 and 1993 tax years.  On September 21, 1995, Mr. Matos met with petitioner, and petitioner refused to agree to any adjustment that included the personal holding company tax.  On September 27, 1995, petitioner sent Mr. Matos by facsimile a list of expenses for KSCI's 1993 tax year.

On November 13, 1995, Mr. Matos prepared Forms 1120, U.S. Corporation Income Tax Return, for KSCI using information derived from KSCI's Forms 1120S and other materials obtained during the examination.  At a December 15, 1995, meeting, Mr. Matos proposed adjustments based on an examination of the Forms 1120S filed by KSCI for the 1992 and 1993 tax years that treated KSCI as a personal holding company rather than as an S corporation.

On December 15, 1995, petitioner and Mrs. Chan (the Chans) executed Forms 872, Consent to Extend the Time to Assess Tax, for each of their joint tax returns filed for tax years 1992 and 1993.  On January 16, 1996, the IRS sent petitioner a letter proposing examination adjustments to the Chans' 1992 and 1993 tax returns.  In the letter, the IRS treated KSCI as a C corporation and proposed to treat certain payments made by KSCI as constructive dividends to the Chans.

On January 16, 1996, the IRS sent a letter to petitioner proposing examination adjustments to KSCI's 1992 and 1993 tax

returns.  The adjustments treated KSCI as a personal holding company under section 542, and the proposed tax deficiencies for KSCI were computed as if KSCI were a C corporation.  The proposed increases in the tax liabilities of KSCI and the Chans totaled more than $103,000, plus interest and penalties, and were primarily based on the premise that KSCI was a personal holding company and not an S corporation.

On February 2, 1996, petitioner mailed a certified letter to the IRS seeking an administrative appeal of the examination changes.  On March 21, 1996, the IRS transferred the Chans' case to its Appeals Office in Long Island, New York.  From February 2, 1996, until January 15, 1997, the IRS did not respond in writing to the request by KSCI and the Chans for an Appeals Office review of the adjustments proposed by Mr. Matos.

Petitioner and William J. Peter (Mr. Peter), the Appeals Officer assigned to review the tax returns of KSCI and the Chans, had a meeting scheduled for April 9, 1997.  The meeting, however, was postponed because Mr. Peter was selected for jury duty.  On July 24, 1997, Mr. Peter and petitioner held a conference to discuss the proposed adjustments.

On July 29, 1997, Mr. Peter sent the Chans a letter and enclosed agreement forms for them to sign reflecting the adjustments agreed upon during petitioner's and Mr. Peter's July 24 conference.  In the computations reflected in the Form 870-AD,

Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment, enclosed with the July 29 letter, KSCI was treated as an S corporation. The Form 870-AD reflected adjustments to increase the taxable income of KSCI by $48,864 and $49,092 for 1992 and 1993, respectively. Because KSCI was treated as an S corporation, there was no tax imposed on KSCI as a result of the adjustments.

The Form 870-AD reflected adjustments to increase the taxable income of petitioner and his wife by $42,755 and $42,803 for 1992 and 1993, respectively. As a result of the increases in taxable income, the Form 870-AD set forth increases in the Chans' tax liabilities of $9,477 and $9,868 for the respective tax years. On August 4, 1997, Mr. and Mrs. Chan executed the Form 870-AD.

On August 21, 1997, Mr. Peter sent a letter to petitioner reciting approval of the settlement of examination changes. In the Appeals Transmittal and Supporting statement, dated August 21, 1997, Mr. Peter explained that it was an error for the examining agent to treat KSCI as a C corporation in the examination. Mr. Peter concluded that KSCI was not a personal holding company, and that absent evidence to the contrary, petitioner would not be treated as having received constructive dividends from KSCI in 1992 and 1993.

On October 20, 1997, the IRS mailed correspondence to the Chans consisting of final Statements of Account and bills for examination adjustments for the Chans' taxable years 1992 and 1993. Petitioner first was informed of the amount of interest computed with respect to the deficiencies in the Chans' income taxes on this occasion.

Petitioner filed a Form 433-F, Collection Information Statement, on November 26, 1997, requesting to pay the amounts owed in installments of $400 per month. On January 26, 1998, the IRS sent a letter to petitioner rejecting his request for payment by installment. After receiving a letter from petitioner concerning the rejection of his installment agreement request, the IRS, on March 18, 1998, consented to allow the Chans to pay their tax liability in $400 monthly installments.

On April 11, 1998, petitioner sent to the IRS a letter requesting waiver of interest and penalties with respect to the adjustments for the taxable years 1992 and 1993. On April 28, 1998, the IRS prepared a Notice of Federal Tax Lien concerning the unpaid income tax deficiency assessments. On May 4, 1998, the IRS sent a letter to petitioner notifying him that before any request for penalty abatement could be entertained by the IRS, petitioner would have to pay the entire amount of tax owed. On November 14, 1998, petitioner filed Forms 843, Claim for Refund and Request for Abatement, seeking interest and penalty

abatement.  On January 14, 1999, the IRS mailed a letter to petitioner disallowing an abatement of interest.

On January 25, 1999, petitioner mailed the IRS a certified letter replying to the IRS's disallowance of his request for abatement of interest and penalties.  On March 29, 1999, an IRS Appeals officer mailed a letter to petitioner disallowing petitioner's abatement claims, and a final determination letter was issued on May 6, 1999.  On October 9, 1999, petitioner's Petition for Review of Failure to Abate Interest Under Code Section 6404 on the assessed tax deficiencies for 1992 and 1993 was filed with the Court.

Respondent concedes that interest on the tax deficiencies assessed with respect to petitioner and his wife should be abated pursuant to section 6404(e) for the period from February 2 through December 31, 1996.  Petitioner concedes that the interest that accrued before October 20, 1994, should not be abated.

### Discussion

Pursuant to section 6404(i),[1] the Tax Court has the authority to review the Commissioner's denial of a taxpayer's request for abatement of interest.  The Court may order an abatement where the Commissioner's failure to abate interest was

---

[1] Sec. 6404(i) was formerly designated sec. 6404(g) but was redesignated sec. 6404(i) by the Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 685, 743, 745.

an abuse of discretion.  Sec. 6404(i).  The taxpayer must demonstrate that the Commissioner, in failing to abate interest, exercised his discretion arbitrarily, capriciously, or without sound basis in law or fact.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner requests abatement of interest pursuant to section 6404(e)(1).  Section 6404(e)(1), as applicable to petitioner's 1992 and 1993 tax years,[2] reads as follows:

> SEC. 6404(e).  Assessments of Interest Attributable to Errors and Delays by Internal Revenue Service.--
>
> (1) In general. – In the case of any assessment of interest on–
>
> (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>
> (B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period.

_____

[2] Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error or delay in performing a "ministerial or managerial" act.  Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1452, 1457 (1996).  That standard, however, applies to tax years beginning after July 30, 1996.  TBOR 2 sec. 301(c), 110 Stat. 1457.

> For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

The deficiency or payment, therefore, must be attributable to an error or delay by an officer or employee (employee) of the IRS in the performance of a ministerial act. Id.

Temporary regulations interpreting section 6404(e) define the term "ministerial act" as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[3] A decision concerning the proper application of Federal tax law, or other Federal or State law, is not a ministerial act. Id.

Congress intended for the Commissioner to abate interest "where failure to abate interest would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B.

---

[3] Final regulations under sec. 6404, issued in 1998 and generally applicable to interest accruing on deficiencies or payments of tax for taxable years beginning after July 30, 1996, provide the same definition of ministerial act. Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

(Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208. Congress intended that abatement would be used sparingly, and it did not intend that abatement "be used routinely to avoid payment of interest". Id.

Petitioner contends that by conceding that the assessment of interest on the Chans' tax deficiencies should be abated for the period between February 2 and December 31, 1996, respondent has conceded that he abused his discretion when he failed to abate interest resulting from the erroneous performance of a ministerial act. Petitioner argues that the question before the Court relates to the appropriate period for the abatement of interest and that the resolution of this issue does not require a further showing under an abuse of discretion standard. Rather, petitioner maintains that he need only demonstrate that the interest he seeks to have abated was attributable to errors or delays by respondent's employees in performing ministerial acts.

Respondent maintains that the specified period for which he agreed to abate the assessment of interest coincides with a demonstrable lack of respondent's activity between the completion of the underlying income tax examination by Mr. Matos and the response to the request by KSCI and the Chans for an administrative appeal of the examination findings. Consequently, respondent reasons that the concession derives from that delay rather than an admission that respondent

otherwise committed any errors or delays in the performance of a ministerial act in denying petitioner's interest abatement request during the administrative process.

Respondent stipulated that "interest on the tax deficiencies assessed with respect to Mr. and Mrs. Chan for 1992 and 1993 should be abated pursuant to Section 6404(e) of the Internal Revenue Code for the period from February 2, 1996 through December 31, 1996." (Emphasis added.)  By conceding that interest should be abated pursuant to section 6404(e), respondent conceded that the requirements of that section were satisfied.  Thus, respondent has acknowledged that the assessment of interest for that period on the Chans' deficiencies is attributable to an error or delay by an IRS employee in performing a ministerial act.

To establish that he is entitled to have the assessment of interest abated for any other period, petitioner first must show that the interest assessed for that period is attributable to the delay acknowledged by respondent or that the interest is attributable to an error or another delay by an IRS employee in performing a ministerial act.  Respondent "may abate the assessment of all or any part of such interest for any period." Sec. 6404(e) (emphasis added).  Thus, petitioner must establish that respondent abused his discretion by failing to abate

interest for the specific periods for which petitioner seeks to have the assessment of interest abated.

Petitioner makes no argument regarding the delay between the completion of the underlying income tax examination and the administrative appeal of the examination findings but maintains that the examining agent's mischaracterization of KSCI as a C corporation was a ministerial act. Petitioner argues that the mischaracterization was a ministerial act because: (1) The examining agent treated KSCI as a C corporation without engaging in any analysis and without making any judgments or discretionary determinations; (2) the examining agent's disregard of KSCI's status as an S corporation was arbitrary and based solely on instructions from his supervisor and not from any reasoned considerations of facts or law; and (3) the examining agent's approach was a procedural error that was tantamount to placing KSCI's tax returns in the C corporation "stack" rather than in the S corporation "stack".

Petitioner contends that respondent's error directly resulted in the imposition of interest on the Chans with respect to the ultimately agreed tax deficiencies for 1992 and 1993. If not for this error, petitioner maintains, the determination of the proper deficiencies would have been made timely, and the Chans could have paid the deficiencies.

We disagree with petitioner's reasoning. First, the examining agent's characterization of KSCI as a C corporation was a result of the misapplication of the personal holding company provisions of the Internal Revenue Code. Mr. Matos was instructed by his supervisor to research the effect of the personal holding company rules on the Chans' Form 1040 and KSCI's Form 1120S. Mr. Matos's activity record indicates that Mr. Matos researched, albeit cursorily, the personal holding company provisions and concluded that two tests determined whether a corporation was a personal holding company: The stock ownership test and the adjusted gross income test. It appears that on the basis of this research Mr. Matos's supervisor instructed him to apply the personal holding company provisions to KSCI.

Mr. Peter, the Appeals officer assigned to the administrative appeal of the underlying cases, determined that Mr. Matos had incorrectly treated KSCI as a personal holding company. Mr. Peter concluded that pursuant to section 1363(a) the personal holding company tax is not applicable to electing subchapter S corporations. Section 1363(a) provides that "Except as otherwise provided in this subchapter, an S corporation shall not be subject to the taxes imposed by this chapter." The chapter referred to is chapter 1 of the Internal Revenue Code of which the personal holding company provisions

of sections 541 through 547 are a part. Because subchapter S
of chapter 1 of the Internal Revenue Code does not specifically
provide that S corporations are subject to the personal holding
company provisions, an S corporation is not subject to the
personal holding company rules.

The Appeals Transmittal Memorandum and Supporting Statement
completed by Mr. Peter with respect to the Chans' 1992 and 1993
tax years stated that "the examining agent determined that the
corporation was a personal holding company ("PHC") subject to
the personal holding company tax and <u>no longer eligible</u> as a
subchapter S corporation." (Emphasis added.) The Appeals
Transmittal Memorandum and Supporting Statement completed by
Mr. Peter with respect to KSCI's case summarized Mr. Matos's
classification of KSCI as a C corporation as follows:

> Finally, the examining agent determined that the
> taxpayer was a personal holding company ("PHC") subject
> to the PHC tax. <u>As a result of his determining that
> the taxpayer was a PHC</u>, he denied the taxpayer its
> subchapter S status and computed its tax liability
> based upon the taxpayer being a regular Chapter C
> corporation. [Emphasis added.]

The record as whole establishes that either Mr. Matos or
his supervisor determined that the personal holding company
provisions applied to KSCI regardless of its election to be
treated as an S corporation.[4] Such a decision involves the

---

[4] Although the provisions of sec. 1362(d)(3) do not apply
to the case at bar, they can cause certain S corporations with
(continued...)

proper application of Federal tax law and thus is not a ministerial act.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

Even if Mr. Matos simply followed his supervisor's instructions when he ultimately applied the personal holding company provisions to KSCI and treated it as a C corporation, the decision by the supervisor to apply those provisions to KSCI was not a procedural or mechanical act.  The decision required the exercise of judgment and application of the law as evidenced by the supervisor's several requests recorded in the activity record in KSCI's underlying case that Mr. Matos research the personal holding company rules.

Assuming arguendo that the treatment of KSCI as a personal holding company was a ministerial act, the assessment of interest in this case was not attributable to that act.  The interest at issue was assessed on a deficiency resulting from petitioner's failure to report capital gains and dividend

---

[4](...continued)
accumulated earnings and profits to lose their S corporation status and be treated as C corporations.  The examining agent here applied the personal holding company provisions to KSCI as if the provisions operated in like manner to sec. 1362(d)(3) to terminate a corporation's valid election to be treated as an S corporation.  We note that former sec. 1372(e)(5) as originally enacted in 1958 provided for the termination of S corporation status if the corporation had passive investment income as defined in sec. 1372(e)(5).

income from KSCI, as well as KSCI's deducting office expenses to which it was not entitled. On their 1992 and 1993 Forms 1040, the Chans reported $6,109 and $6,289, respectively, as income from KSCI. Appeals determined that petitioner received income of $42,755 in 1992 and $42,803 in 1993 from KSCI, and petitioner agreed to deficiencies and additions to tax based on the receipt of that income.

We are unpersuaded by petitioner's argument that respondent's erroneous determination that KSCI was a personal holding company prevented him from settling earlier with respondent and thereby directly caused the assessment of interest in this case. Nothing in the record suggests that petitioner made any attempt to pay or acknowledge the deficiencies in tax attributable to his failure to report taxable income from KSCI.

Further, petitioner's reliance on the fact that it took the Appeals officer only one meeting with Mr. Chan to agree to the appropriate tax adjustments does not support his theory that the interest covering the entire period for which he seeks abatement is attributable to the examining agent's improper application of the personal holding company provisions. Petitioner's first meeting with Mr. Matos took place on January 4, 1995. At that meeting petitioner provided Mr. Matos with various KSCI records, and Mr. Matos requested that additional

information regarding KSCI be supplied on or before January 18, 1995. It was not until April 27, 1995, that petitioner complied with Mr. Matos's request for additional information. Petitioner acknowledges that it was not until April 21, 1995, that Mr. Matos began to review whether KSCI was a personal holding company.

The record also indicates that Mr. Matos collected other information from petitioner throughout the course of his examination. Nothing in the record indicates that this information was related solely to the treatment of KSCI as a personal holding company. During his examination, Mr. Matos made adjustments to KSCI's income for omitted capital gain and dividend income and disallowed certain KSCI expenses. These adjustments and disallowances were sustained at the administrative appeal level. The information gathered during the examination process enabled the Appeals officer to resolve KSCI's and the Chans' 1992 and 1993 deficiency determinations in a short time.

For the period from October 20, 1997, when the IRS mailed the Chans final Statements of Account and bills for examination adjustments, to the present, any interest which accrued on petitioner's tax deficiencies was solely due to petitioner's failure to pay his outstanding tax liabilities. Petitioner's argument that he could have sold his Hong Kong stocks before

the "Asia Financial Crisis", which according to him started on October 23, 1997, at much higher prices and paid the tax due is irrelevant to our consideration.[5]

Consequently, respondent's refusal to further abate interest was not an abuse of discretion.  We have considered all other arguments advanced by petitioner, and to the extent not discussed above, have found those arguments to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[5]  We note that petitioner agreed to the tax deficiencies and penalties for his 1992 and 1993 tax years in August of 1997, before the start of the financial crisis in Asia, which petitioner alleges caused him to pay his tax liabilities in installments.  Petitioner chose to continue to speculate in the Hong Kong Stock Exchange until he received his final statements of account and bills for those tax years.